TIEN FU HSU; LISA SU FAMILY TRUST; LISA SU, TRUSTEE; PETER B. LIAO; WESTPARK, INC.; LUCKY LAND COMPANY; LUCKY LAND COMPANY INVESTMENTS; LUCKY LAND COMPANY ENTERPRISES, LIMITED PARTNERSHIP; AND WEST PARK COMPANY 1, APPELLANTS, *v.* COUNTY OF CLARK, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA, RESPONDENT.

No. 46461

December 27, 2007

173 P.3d 724

*Law Offices of Kermitt L. Waters* and *Kermitt L. Waters* and *James Jack Leavitt*, Las Vegas, for Appellants.

*David J. Roger*, District Attorney, and *Michael L. Foley*, Deputy District Attorney, Clark County; *Jones Vargas* and *Kirk B. Lenhard, R. Douglas Kurdziel*, and *Scott M. Schoenwald*, Las Vegas, for Respondent.

Before the Court EN BANC.[1]

# OPINION

By the Court, MAUPIN, C. J.:

In this appeal, we determine whether this court should adopt equitable exceptions to the law of the case doctrine. We also revisit the prior decision we issued in the first appeal of this airspace takings case, given our intervening decision in *McCarran International Airport v. Sisolak*,[2] which set forth a new scheme for analyzing airspace takings claims. We conclude that, in some instances, equitable considerations justify a departure from the doctrine that the principles set forth in a first appeal are the law of the case on all subsequent proceedings. Accordingly, when this court issues an intervening decision that constitutes a change in controlling law, courts may depart from the decided law of the case and apply the new rule of law. Thus, applying the rule of law set forth in *Sisolak* to this case, we conclude that appellants properly established a claim for a per se regulatory taking of airspace and are entitled to appropriate just compensation.

## FACTS AND PROCEDURAL HISTORY

This matter involves a novel takings issue raised during a suit for inverse condemnation.

In 1981 and 1990, Clark County passed two ordinances that placed "transition zone" height restrictions on property surrounding McCarran International Airport, including a strip of land owned by appellants. In 1995, appellants (the landowners) counterclaimed against the County in an eminent domain action, contending that these restrictions inversely condemned an avigation easement over their property without compensation and in violation of the Nevada and United States Constitutions. On a motion for summary judgment, the district court ruled that the ordinances enlarging transition zones over the property constituted a per se physical taking of the landowners' property as a matter of law. In support of its holding, the district court specifically concluded that the transition zone height restrictions preserved the right of aircraft to fly through the airspace and that aircraft actually utilized

---

[1] THE HONORABLE DEBORAH A. AGOSTI, Senior Justice, was appointed by the court to sit in place of THE HONORABLE MARK GIBBONS, Justice, who voluntarily recused himself from participation in this matter. Nev. Const. art. 6, § 19; SCR 10. The Honorable Connie J. Steinheimer, Judge of the Second Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE NANCY M. SAITTA, Justice. Nev. Const. art. 6, § 4.

[2] 122 Nev. 645, 137 P.3d 1110 (2006), *cert. denied*, 549 U.S. 1206 (2007).

the airspace. The matter proceeded to a jury trial on the sole issue of just compensation and resulted in a substantial jury verdict.

On appeal, this court, sitting en banc as a five-justice court,[3] reversed the district court in an unpublished order, concluding that the district court erred in determining that a per se physical taking occurred.[4] In this, we determined that the height restrictions created by the ordinances did not involve a physical ouster, but rather regulated use of the property. From this, we reasoned that the takings issue should have been decided under the regulatory takings principles set forth in *Penn Central Transportation Co. v. New York City*.[5] Concluding that the landowners had not exhausted their administrative remedies, as required by *Penn Central*, we reversed and remanded to give the landowners that opportunity.

On remand, the district court directed the landowners to submit a proposed development plan to the County by January 1, 2006, and stated that it would dismiss the landowners' claims if they had not submitted a plan or otherwise begun to exhaust their administrative remedies by this date. However, rather than submitting a development plan for approval, the landowners sold the subject property, causing the district court to dismiss the case without prejudice on December 6, 2005.[6] The landowners then filed the present appeal to this court.

During the pendency of the landowners' current appeal, this court issued a published opinion in *McCarran International Airport v. Sisolak*.[7] In *Sisolak*, under facts similar to this case, this court concluded that county "runway approach zone" height restrictions constituted a permanent physical invasion of the landowner's airspace and determined that Sisolak's inverse condemnation claims were properly analyzed as a "per se *regulatory* taking,"[8] as

---

[3]Sitting on the court were THE HONORABLE DEBORAH A. AGOSTI, THE HONORABLE A. WILLIAM MAUPIN, and THE HONORABLE NANCY BECKER, Justices, THE HONORABLE CLIFF YOUNG, Senior Justice, who was appointed by the court to sit in place of THE HONORABLE MIRIAM SHEARING, Chief Justice, and the Honorable Jerome M. Polaha, Judge of the Second Judicial District Court, who was designated by the Governor to sit in place of THE HONORABLE ROBERT E. ROSE, Justice. THE HONORABLE MYRON E. LEAVITT, Justice, who died in office on January 9, 2004, had already recused himself from participation in the decision of the matter when it was docketed in 2001. THE HONORABLE MARK GIBBONS, Justice, also voluntarily recused himself from participation in the decision of the matter.

[4]For simplicity, we refer to the first appeal in this case as *Hsu I*.

[5]438 U.S. 104 (1978).

[6]The purchase agreement entered by the landowners specified that the purchase price of the property did not include any rights to the landowners' pending inverse condemnation action against the County, that the landowners retained the right to pursue this suit, and that any awards, judgments, or settlements arising from this suit remained the property of the landowners.

[7]122 Nev. 645, 137 P.3d 1110.

[8]*Id.* at 666-67, 137 P.3d at 1124-25 (emphasis added) (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982)).

defined in *Loretto v. Teleprompter Manhattan CATV Corp.*[9] Because the height restrictions constituted a per se taking, this court further concluded that Sisolak's claims did not fall within the ambit of *Penn Central*, indicating that Sisolak was not required to exhaust his administrative remedies before bringing suit. This court accordingly affirmed the district court's inverse condemnation award.

The landowners now argue that, because the facts in this case are similar to those in *Sisolak*, they are entitled to the benefit of this court's *Sisolak* decision, indicating that we should revisit our prior decision in *Hsu I*, and reinstate the original judgment of the district court. In this, they seek our clarification of the scope of the "law of the case" doctrine.

## DISCUSSION

The doctrine of the law of the case provides that the law or ruling of a first appeal must be followed in all subsequent proceedings, both in the lower court and on any later appeal.[10] Thus, under a general application of this doctrine, our decision in *Hsu I* would remain the law of the case and could not be revisited in this appeal. Nonetheless, the landowners contend that we should adopt equitable exceptions to the established law of the case doctrine and re-analyze our holding in *Hsu I* in light of our decision in *Sisolak*. The landowners further argue that application of *Sisolak* requires this court to reinstate the district court's initial judgment, including its finding of liability, the award of just compensation, and attorney fees and prejudgment interest.

We agree that in some instances, equitable considerations justify a departure from the law of the case doctrine. Accordingly, we take this opportunity to establish that when this court issues an intervening decision that constitutes a change in controlling law, courts subject to the previously decided law of the case may depart from it and apply the new rule of law. Following our general discussion of the law of the case doctrine, we analyze the landowners' claims in light of our decision in *Sisolak* and conclude that the transition zone height restrictions imposed by the County effectuated a per se regulatory taking of the landowners' airspace. Finally, we assess the impact of *Sisolak* on the calculation of just compensation and determine that the County is entitled to a new trial to determine the proper compensation due.

### Law of the case doctrine

 ██

Under the law of the case doctrine, "[w]hen an appellate court states a principle or rule of law necessary to a decision, the prin-

---

[9]458 U.S. 419 (1982).

[10]*Clem v. State*, 119 Nev. 615, 620, 81 P.3d 521, 525 (2003).

ciple or rule becomes the law of the case and must be followed throughout its subsequent progress, both in the lower court and upon subsequent appeal."[11] The law of the case doctrine "is designed to ensure judicial consistency and to prevent the reconsideration, during the course of a single continuous lawsuit, of those decisions which are intended to put a particular matter to rest."[12] The law of the case doctrine, therefore, serves important policy considerations, including judicial consistency, finality, and protection of the court's integrity.[13]

However, the law of the case doctrine is not a jurisdictional rule.[14] Rather, as observed by the United States Supreme Court, it "merely expresses the practice of courts generally to refuse to reopen what has been decided[:] [it is] not a limit to their power."[15] Accordingly, the United States Supreme Court has concluded that "[u]nder law of the case doctrine, as now most commonly understood, it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice."[16] Based on statements such as these, federal courts have adopted three specific exceptions to the law of the case doctrine, concluding that a court may revisit a prior ruling when (1) subsequent proceedings produce substantially new or different evidence, (2) there has been an intervening change in controlling law, or (3) the prior decision was clearly erroneous and would result in manifest injustice if enforced.[17] Nevertheless, as the United States Supreme Court has noted, absent those "extraordinary

---

[11]*Wickliffe v. Sunrise Hospital*, 104 Nev. 777, 780, 766 P.2d 1322, 1324 (1988); *see also Emeterio v. Clint Hurt and Assocs.*, 114 Nev. 1031, 1034, 967 P.2d 432, 434 (1998) (stating that "[w]hen an appellate court states a rule of law necessary to a decision, that rule becomes the law of the case and must be followed throughout subsequent proceedings"); *Geissel v. Galbraith*, 105 Nev. 101, 103, 769 P.2d 1294, 1296 (1989); *Sherman Gardens Co. v. Longley*, 87 Nev. 558, 563, 491 P.2d 48, 51 (1971) (noting that " '[t]he decision (on the first appeal) is the law of the case, not only binding on the parties and their privies, but on the court below and on this court itself' " (quoting *Wright v. Carson Water Co.*, 22 Nev. 304, 308, 39 P. 872, 873-74 (1895))).

[12]*U.S. v. Real Property Located at Incline Village*, 976 F. Supp. 1327, 1353 (D. Nev. 1997).

[13]*Poet v. Thompson*, 144 P.3d 1067, 1072 (Or. Ct. App. 2006); *see also Real Property Located at Incline Village*, 976 F. Supp. at 1353.

[14]*See Columbus-America Disc. Group v. Atlantic Mut. Ins.*, 203 F.3d 291, 304 (4th Cir. 2000).

[15]*Messenger v. Anderson*, 225 U.S. 436, 444 (1912).

[16]*Arizona v. California*, 460 U.S. 605, 618 n.8 (1983).

[17]*See Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006); *U.S. v. Thorn*, 446 F.3d 378, 383 (2d Cir. 2006); *U.S. v. McCrimmon*, 443 F.3d 454, 460 (5th Cir. 2006); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1292 (11th Cir. 2005); *Weston v. Harmatz*, 335 F.3d 1247, 1255 (10th

circumstances," a court "should be loathe" to revisit its prior decisions.[18]

In addition to the federal courts, many state courts have also adopted these three exceptions to the law of the case doctrine.[19] While the remaining states have not clearly embraced all of these specific exceptions, most recognize that a court is not absolutely bound by the law of the case and embrace at least one or more of these exceptions, or allow departure from prior decisions if enforcement of the previous decision would cause an unjust result.[20] Although this court has never explicitly adopted any formal exceptions to the law of the case doctrine, in *Clem v. State*, we implicitly acknowledged the possibility of exceptions to the law of the case, stating that "[w]e will depart from our prior holdings only where we determine that they are so clearly erroneous that continued adherence to them would work a manifest injustice."[21] Similarly, in *Leslie v. Warden*, we actually revisited our decision

Cir. 2003); *Ellis v. U.S.*, 313 F.3d 636, 647-48 (1st Cir. 2002); *Columbus-America Disc. Group*, 203 F.3d at 304; *In re City of Philadelphia Litigation*, 158 F.3d 711, 718 (3d Cir. 1998); *U.S. v. Behler*, 100 F.3d 632, 639 n.2 (8th Cir. 1996); *Leslie Salt Co. v. U.S.*, 55 F.3d 1388, 1393 (9th Cir. 1995); *Shore v. Warden, Stateville Prison*, 942 F.2d 1117, 1123 (7th Cir. 1991).

[18]*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988).

[19]*See, e.g., Associated Aviation Underwriters v. Wood*, 98 P.3d 572, 585 (Ariz. Ct. App. 2004); *Scott v. State*, 822 A.2d 472, 476 (Md. Ct. Spec. App. 2003); *Com. v. Clayton (No. 1)*, 827 N.E.2d 1273, 1276 (Mass. App. Ct. 2005); *Foreman v. Foreman*, 701 N.W.2d 167, 172-73 (Mich. Ct. App. 2005) (stating that the law of the case doctrine will not be applied when the facts are not substantially the same, or there has been a change in controlling law); *In re Estate of Corbin*, 166 S.W.3d 102, 106 (Mo. Ct. App. 2005); *In re Guardianship and Conserv. of Onstad*, 704 N.W.2d 554, 558 n.2 (N.D. 2005); *Com. v. Starr*, 664 A.2d 1326, 1332 (Pa. 1995); *Texaco Refining v. Dept. of Environment*, 185 S.W.3d 818, 823 n.6 (Tenn. Ct. App. 2005); *Anderson v. Doms*, 75 P.3d 925, 932 n.8 (Utah Ct. App. 2003); *State v. Gomes*, 690 A.2d 351, 353 (Vt. 1996) (holding that departure from law of the case doctrine is warranted if there has been a substantial change in evidence, or adherence to the previous decision would result in manifest injustice); *Bass v. Rose*, 609 S.E.2d 848, 851 n.6 (W. Va. 2004).

[20]*See, e.g., People v. Cooper*, 57 Cal. Rptr. 3d 389, 409 (Ct. App. 2007) (stating that law of the case doctrine does not apply in situations where application of the doctrine would result in an "unjust decision" or where a controlling rule of law has been altered or clarified (quoting *People v. Gray*, 118 P.3d 496, 517 (Cal. 2005))); *Brezinka v. Bystrom Bros., Inc.*, 403 N.W.2d 841, 843 (Minn. 1987) (noting that "the doctrine of law of the case should not apply where, in the interval between two appeals of a case, there has been a change in the law by legislative action or by a judicial ruling entitled to deference"); *Lahmann v. Grand Aerie of Fraternal Order*, 121 P.3d 671, 675 (Or. Ct. App. 2005) (stating that a court is not bound by the law of the case doctrine when a party brings a persuasive new argument based on new information or new developments in the law).

[21]119 Nev. 615, 620, 81 P.3d 521, 525 (2003).

upholding a death penalty sentence when we determined that failure to do so ''would amount to a fundamental miscarriage of justice.''[22]

■■■■■■

Given that a majority of states in this country have adopted at least one or more exceptions to the law of the case doctrine, and the federal courts have adopted all three exceptions, we take this opportunity to hold that, as indicated by the federal courts, when the controlling law of this state is substantively changed during the pendency of a remanded matter at trial or on appeal, courts of this state may apply that change to do substantial justice. In other words, ''the doctrine of the law of the case should not apply where, in the interval between two appeals of a case, there has been a change in the law by . . . a judicial ruling entitled to deference.''[23]

■■■■■■

For the purposes of this exception, a judicial ruling entitled to deference includes a decision by the highest court of this state.[24] An example of a change in controlling law by way of a state supreme court decision occurred in *Brezinka v. Bystrom Brothers, Inc.*, in which the Minnesota Supreme Court explained that:

> This court is the final authority on legal questions arising under our state's Workers' Compensation Act. Here, before finality had been achieved in [this case], our court in a different case ruled on the controlling principle of law. Consequently, the compensation judge did not err in following [the intervening supreme court] ruling even though by so doing he disregarded the law of the case as [previously] determined . . . .[25]

Similarly, in this case, in the interval between the landowners' first appeal and the current appeal, we issued an opinion in *Sisolak*, a substantially similar matter, which represented a major change in law controlling Nevada's airspace takings jurisprudence. Therefore,

---

[22]118 Nev. 773, 780, 59 P.3d 440, 445 (2002).

[23]*Brezinka*, 403 N.W.2d at 843.

[24]*See, e.g.*, *Hopkins v. Dyer*, 820 N.E.2d 329, 333 (Ohio 2004) (holding that an intervening opinion issued by the Ohio Supreme Court constituted a change in controlling law necessitating departure from the law of the case doctrine); *Dedge v. State*, 832 So. 2d 835, 836 (Fla. Dist. Ct. App. 2002) (noting that a decision by the Florida Supreme Court to enact a new procedural rule constituted a change in controlling law).

[25]403 N.W.2d at 843.

based on this change in controlling law, we conclude that it is appropriate to reassess the landowners' claims based upon the new rules set forth in *Sisolak*.[26]

## Effect of Sisolak

The landowners contend that application of the rules set forth in *Sisolak* indicates that the County's enactment of the transition zone height restrictions surrounding McCarran Airport constituted a per se regulatory taking of the landowners' airspace. In this, they argue that this court should reinstate the original district court judgment's liability determination and award of just compensation, as well as the district court award of attorney fees and prejudgment interest.[27] While we agree that the County's actions amount to a per se regulatory taking under *Sisolak*, we conclude that a new trial is necessary to determine the amount of just compensation due.

---

[26]Because we determine that the change in controlling law exception to the law of the case doctrine applies, we do not consider whether this court should also formally adopt the ''substantial new evidence'' or ''clear error resulting in manifest injustice'' exceptions to the law of the case doctrine. However, we observe that, despite the landowners' contentions, discovery of a relatively minor factual error in our order in *Hsu I* suggesting that the landowners' had obtained a 50-foot height variance for construction of a billboard on their property does not constitute ''substantial new evidence'' that justifies departure from the law of the case doctrine. Our determination in *Hsu I* that the landowners had not demonstrated the futility of exhausting their administrative remedies rested on several pieces of evidence besides the erroneous ''billboard variance,'' indicating that this ''new evidence'' would have little bearing on our previous decision. *See Suel v. Secretary of Health and Human Services*, 192 F.3d 981, 986 (Fed. Cir. 1999) (stating that ''the new evidence relied upon to override [the] law of the case must be substantial, even conclusive, before it is appropriate to reopen a judgment on which subsequent phases of the case have been decided'' (citing 18 Charles Alan Wright, et al., *Federal Practice and Procedure* § 4478, at 800 (2d ed. 1981))). We likewise reject the proposition that our decision in *Hsu I* was based on clear error such that adherence to the decision would work a manifest injustice. *See In re City of Philadelphia Litigation*, 158 F.3d 711, 720 (3d Cir. 1998) (noting that if a decision is not clearly erroneous, enforcement of that decision will not generally work a manifest injustice).

As this appeal and our decision in *Hsu I* are part of a single continuous suit, we also reject the County's assertion that the doctrine of res judicata prohibits this court from revisiting the merits of the landowners' takings claim. *See Florida Dept. of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001) (''Where successive appeals are taken in the same case there is no question of res judicata, because the same suit, and not a new and different one, is involved. Under these circumstances, the doctrine of the law of the case applies.'' (citation omitted)).

[27]The landowners also argue that they are entitled to an increased award of attorney fees and prejudgment interest.

### Liability determination

As discussed above, in *Sisolak*, Steve Sisolak brought inverse condemnation proceedings against the County in response to the enactment of height restrictions that placed Sisolak's property in the "runway approach zone" and "departure critical area" of McCarran Airport. While neither Sisolak nor the County could provide the exact number of planes utilizing Sisolak's airspace, an employee of McCarran Airport testified that "it was 'more likely than not' that, on occasion, aircraft flew over Sisolak's property at altitudes lower than 500 feet."[28]

On appeal, this court determined that Sisolak had a protected property interest in the use of his airspace up to 500 feet.[29] With respect to the taking of this airspace, we observed that a per se regulatory taking occurs whenever a regulation authorizes a permanent physical invasion or results in the complete deprivation of all economically viable use of a piece of property.[30] To constitute a permanent physical invasion, the regulation must actually grant the government physical possession of the property and not simply forbid certain uses of private space.[31] Beyond the two categories of permanent physical invasion and deprivation of all economically viable use, this court reiterated that all other takings are governed by the framework established in *Penn Central Transportation Co. v. New York City*.[32]

Unlike *Hsu I*, this court in *Sisolak* determined that Sisolak's claims did not fall within the ambit of *Penn Central*.[33] Rather, a majority of this court held that the regulations were a per se regulatory taking, as the ordinances constituted a permanent physical invasion of Sisolak's airspace.[34] Although this court acknowledged that the ordinances did not directly authorize the physical invasion of Sisolak's airspace, and "the airplanes flying over Sisolak's property are not constantly occupying the airspace in a temporal sense," this court reasoned that "the invasion is nevertheless permanent because the right to fly through the airspace is preserved

---

[28]*McCarran Int'l Airport v. Sisolak*, 122 Nev. 645, 655, 137 P.3d 1110, 1117 (2006), *cert. denied*, 549 U.S. 1206 (2007).

[29]*Id.* at 661, 137 P.3d at 1121.

[30]*Id.* at 662, 137 P.3d at 1122.

[31]*Id.* at 662-63, 137 P.3d at 1122.

[32]438 U.S. 104 (1978). In determining whether a regulatory taking occurred under *Penn Central*, a court must consider "(1) the regulation's impact on the property owner, (2) the regulation's interference with investment-backed expectations, and (3) the character of the government action." *Sisolak*, 122 Nev. at 663, 137 P.3d at 1122 (citing *Penn Central*, 438 U.S. at 130-31).

[33]122 Nev. at 666-67, 137 P.3d at 1124-25.

[34]*Id.*

by the Ordinances and expected to continue into the future.''[35] Because the ordinances constituted a per se regulatory taking, the court further concluded that Sisolak was not required to exhaust his administrative remedies before bringing his claims for inverse condemnation.[36] This court accordingly affirmed the district court's inverse condemnation award.[37]

While the transition zone height restrictions at issue in this case are not as restrictive as those at issue in *Sisolak*, we nonetheless conclude that application of the rule set forth in *Sisolak* clearly indicates that the County's enactment of the transition zone height restrictions constituted a per se regulatory taking of the Hsu landowners' airspace. As indicated above, in *Sisolak* this court essentially determined that when airport regulations preserve the right to fly through a landowner's airspace, and planes actually make use of this airspace, this constitutes a permanent physical invasion of property and is properly categorized as a ''per se regulatory taking.''[38] In this case, the district court determined that, like the height restrictions in *Sisolak*, the transition zone height restrictions enacted by the County preserved the right of aircraft to fly through the airspace at altitudes lower than 500 feet, and that aircraft actually utilized the airspace. Therefore, as in *Sisolak*, we conclude that these transition zone height restrictions constitute a per se regulatory taking of the landowners' airspace.[39] Due to the ''per se'' nature of this taking, we further conclude that the landowners were not required to apply for a variance or otherwise exhaust their administrative remedies prior to bringing suit. Accordingly, we vacate the district court's dismissal order and instruct the court to enter an order finding the County liable for a per se regulatory taking.[40]

*Just compensation, attorney fees, and prejudgment interest*

In addition to vacating the dismissal order and establishing liability for a per se regulatory taking, the landowners further argue

---

[35]*Id.* at 667, 137 P.3d at 1125.

[36]*Id.* at 664, 137 P.3d at 1123.

[37]*Id.* at 675, 137 P.3d at 1130.

[38]*Id.* at 666-67, 137 P.3d at 1124-25.

[39]The undersigned justice dissented in part to the decision in *Sisolak*, positing that the alleged taking in that case should have been decided under *Penn Central*. 122 Nev. at 681, 137 P.3d at 1134 (MAUPIN, J., dissenting). However, our embrace of the change in the controlling law exception to the law of the case doctrine justly provides the landowners with the benefit of the same law that governed *Sisolak*.

[40]We note that in its original determination of liability, the district court improperly referred to the transition zone height restrictions as a ''per se physical taking.'' Therefore, we do not ''reinstate'' the district court's erroneous liability determination.

that this court should reinstate the original district court judgment's award of just compensation and reinstate or increase the award of attorney fees and prejudgment interest. We disagree. At the original trial in this case, the district court specifically excluded all testimony related to whether the landowners may have been able to obtain a variance from the transition zone height restrictions. While the decision in *Sisolak* confirmed that such evidence is irrelevant in analyzing whether or not a taking occurred, evidence related to potential variances is pertinent in determining the amount of just compensation due.[41] This court specifically stated that

> [a]lthough evidence regarding variance procedures is irrelevant to establish whether a property owner is entitled to compensation for a regulatory per se taking, such evidence is still relevant in calculating the amount of compensation due. Evidence of future changes affecting the property, such as variances or zoning ordinances, is admissible to determine the amount of compensation due if the change is reasonably probable.[42]

Thus, we conclude that the district court erred in rejecting evidence regarding the landowners' ability to obtain a variance during the damages phase of trial. We therefore remand this matter to the district court for a new trial on the issue of just compensation, in accordance with the guidance set forth by this court in *Sisolak*. We leave the determination of the admissibility and scope of any specific evidence to the district court's sound discretion under *Sisolak*.

As indicated in *Sisolak*, as successful property owners in an inverse condemnation action, the landowners are also entitled to recover " 'reasonable attorney . . . fees, actually incurred' " under the plain terms of the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act (Relocation Act).[43] Although this court has indicated that attorney fees awarded pursuant to Nevada law may be based on either a "lodestar" amount or a contingency fee,[44] fees awarded pursuant to the Relocation Act must be calculated using "lodestar" analysis.[45] Thus, on remand,

[41]122 Nev. at 672, 137 P.3d at 1128.

[42]*Id.* (footnotes omitted).

[43]*Id.* at 673-75, 137 P.3d at 1129-30 (quoting 42 U.S.C. § 4654(a) (2000)).

[44]*Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864, 124 P.3d 530, 548-49 (2005).

[45]*See, e.g., Moore v. U.S.*, 63 Fed. Cl. 781, 789 (2005) (noting that contingent fees could be awarded pursuant to a settlement agreement between parties to an inverse condemnation proceeding, but that "calculation of an attorney fee under [the Relocation Act] would utilize the lodestar method," even in

we instruct the district court to award the landowners reasonable attorney fees based upon traditional lodestar analysis. Therefore, as explained in prior decisions of both this court and the federal courts, the district court must first "multiply the number of hours reasonably spent on the case by a reasonable hourly rate."[46] Following determination of this "lodestar" amount, we leave it to the sound discretion of the district court to adjust this fee award based upon

> (1) the time and work required; (2) the difficulty of the issue; (3) the skill required to perform the service; (4) the amount of time taken away from other work; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed on the attorney by the case; (8) the amount of money involved and the results obtained; (9) the reputation, experience, and ability of the attorney; (10) the lack of desirability of the case; (11) the length of acquaintanceship with the client; and (12) awards in similar cases.[47]

Finally, we note that *Sisolak* provides that a prevailing party in an inverse condemnation action is entitled to prejudgment interest from the date of taking until the entry of judgment.[48] Here, it appears that the parties stipulated to a November 20, 1995, date of taking and value. Accordingly, we further remand this case for the calculation and award of prejudgment interest from the stipulated date of taking.

## CONCLUSION

The doctrine of law of the case generally provides that the law or ruling of a first appeal must be followed in all subsequent proceedings, both in the lower court and on any later appeal. However, when this court issues an intervening decision that constitutes a change in controlling law, courts subject to a previous decision may

---

light of the parties' existing contingent fee agreement); *Swisher v. U.S.*, 262 F. Supp. 2d 1203, 1207-08 (D. Kan. 2003) (using the lodestar method to calculate actually incurred, reasonable fees under the Relocation Act); *Herbst v. Humana Health Ins. of Nevada*, 105 Nev. 586, 590, 781 P.2d 762, 764 (1989) (noting that the United States Supreme Court has indicated that the correct method for determining an award of attorney fees under federal statutes is the lodestar analysis) (citing *Pennsylvania v. Del. Valley Citizens' Council*, 478 U.S. 546, 564-66 (1986)).

[46]*Herbst*, 105 Nev. at 590, 781 P.2d at 764 (citing *Del. Valley Citizens' Council*, 478 U.S. at 564-66).

[47]*Id.* at 590 n.1, 781 P.2d at 764 n.1 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)).

[48]*Sisolak*, 122 Nev. at 675, 137 P.3d at 1130.

depart from the law of the case and apply the new rule of law. In this case, the rule recently set forth by this court in *McCarran International Airport v. Sisolak* clearly indicates that the height restrictions imposed by the County effectuated a per se regulatory taking of the landowners' airspace. Therefore, we vacate the district court's dismissal order and instruct the court to enter an order finding the County liable for a per se regulatory taking. We remand this matter for a new trial on the issue of just compensation, in accordance with the guidelines set forth in both *Sisolak* and this opinion.[49]

HARDESTY, PARRAGUIRRE, DOUGLAS and CHERRY, JJ., AGOSTI, Sr. J., and STEINHEIMER, D. J., concur.

---

[49]We have reviewed the parties' remaining claims on appeal and conclude that they lack merit. In addition, we note that on July 26, 2007, the court entered an order that granted respondent's motion for leave to file supplements to its answering brief and appendix. That order stated that when considering the merits of this matter, this court would disregard any improper arguments or documents respondent may have presented in either its answering brief or appendix, or the supplements thereto. *See Carson Ready Mix v. First Nat'l Bk.*, 97 Nev. 474, 635 P.2d 276 (1981). Thereafter, appellants moved for the "full court" to review the July 26, 2007, order. Appellants also moved to strike all documents filed by respondent, including the answering brief and supplements thereto, and for the "full court" to consider this motion to strike. We grant appellants' motion for the "full court" to review the July 26, 2007, order and the motion to strike, to the extent that we have considered these requests and address them in this order. We elect to treat the motion to review the July 26, 2007, order as a motion to reconsider that order and, no cause appearing, we deny such reconsideration. In accordance with the July 26, 2007, order, we have disregarded any improper arguments or documents in considering the merits of this matter. Additionally, we note that appellants have been allowed to respond to the answering brief and supplements thereto. In light of the foregoing, and no cause appearing, we also deny appellants' motion to strike all documents filed by respondent.