137 Nev., Advance Opinion 83

# IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES MONTELL CHAPPELL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 77002

**FILED**

DEC 30 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order dismissing a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; Carolyn Ellsworth, Judge.

*Affirmed.*

Rene L. Valladares, Federal Public Defender, and Bradley D. Levenson, Ellesse Henderson, and Scott Wisniewski, Assistant Federal Public Defenders, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Alexander G. Chen, Chief Deputy District Attorney, Clark County,
for Respondent.

---

BEFORE THE SUPREME COURT, EN BANC.[1]

---

[1]The Honorable Abbi Silver, Justice, and the Honorable Douglas W. Herndon, Justice, did not participate in the decision of this matter.

 
21-37157

## OPINION

By the Court, CADISH, J.:

Several mandatory procedural bars apply to postconviction habeas petitions under NRS Chapter 34. To overcome those mandatory procedural bars and avoid dismissal of a postconviction habeas petition, a petitioner must demonstrate good cause and prejudice unless certain narrow exceptions apply. A petitioner must raise a claim of good cause within a reasonable time after it becomes available.

In this case, appellant James Chappell asserted the ineffective assistance of his first postconviction counsel as good cause and prejudice to raise procedurally barred grounds for relief from the guilt phase of his trial. But he did not do so until after the penalty phase retrial he obtained in the first postconviction proceeding, the direct appeal from the judgment entered after the penalty phase retrial, and the remittitur issued on appeal from the district court order denying his second postconviction habeas petition. We conclude that his delay based on those circumstances was not reasonable and therefore he could not rely on the alleged ineffective assistance of first postconviction counsel as good cause and prejudice to raise grounds for relief from the guilt phase of his trial. He did, however, timely assert the alleged ineffective assistance of second postconviction counsel, who was appointed pursuant to a statutory mandate for purposes of Chappell's first opportunity to assert collateral challenges to the death sentence imposed in the penalty phase retrial, as good cause and prejudice to raise procedurally barred grounds for relief from the death sentence. We conclude those ineffective-assistance claims lack merit and therefore the district court did not err in dismissing the petition as procedurally barred. Because we also conclude that Chappell did not show that the failure to consider his claims

Supreme Court
OF
Nevada

(O) 1947A

2

would result in a fundamental miscarriage of justice sufficient to excuse the procedural bars, we affirm the district court order dismissing Chappell's third postconviction petition for a writ of habeas corpus.

## FACTS AND PROCEDURAL HISTORY

Almost three decades ago, appellant James Chappell was serving time for domestic battery in a Las Vegas jail when he was mistakenly released from custody. Upon his release, Chappell went to the mobile home park where his ex-girlfriend lived, climbed through a window into her residence, had sexual intercourse with her, and stabbed her to death with a kitchen knife before fleeing in her car. A jury found Chappell guilty of first-degree murder with the use of a deadly weapon, robbery with the use of a deadly weapon, and burglary and sentenced him to death for the murder. We affirmed the judgment of conviction and sentence on direct appeal. *Chappell v. State (Chappell I)*, 114 Nev. 1403, 972 P.2d 838 (1998).

Chappell filed a timely postconviction petition for a writ of habeas corpus. David Schieck was appointed to represent Chappell in that proceeding. Although the district court rejected Chappell's claims related to the guilt phase, it found that Chappell received ineffective assistance during the penalty phase and ordered a new penalty hearing as to the murder conviction. We affirmed the district court's order partially granting and partially denying the petition. *Chappell v. State (Chappell II)*, Docket No. 43493 (Order of Affirmance, Apr. 7, 2006). At the penalty phase retrial, Schieck and another attorney represented Chappell. The jury returned a death sentence, and this court affirmed the sentence on appeal. *Chappell v. State (Chappell III)*, No. 49478, 2009 WL 3571279 (Nev. Oct. 20, 2009) (Order of Affirmance).

Following the appeal from the judgment entered after the penalty phase retrial, Chappell filed his second postconviction petition for a writ of habeas corpus. The claims in that petition focused on challenges to the death sentence imposed at the penalty phase retrial. Christopher Oram represented Chappell in the second postconviction proceeding. The district court denied the petition, and this court affirmed. *Chappell v. State* (*Chappell IV*), No. 61967, 2015 WL 3849122 (Nev. June 18, 2015) (Order of Affirmance).

Chappell filed a third postconviction petition for a writ of habeas corpus on November 16, 2016. The district court conducted a limited evidentiary hearing on one of Chappell's claims but ultimately dismissed the petition as procedurally barred. This appeal followed.

## DISCUSSION

*The district court did not err in dismissing the petition as untimely, successive, and an abuse of the writ*

Chappell's third postconviction habeas petition was untimely, given that he filed it more than 17 years after the remittitur issued in his direct appeal from the original judgment of conviction and more than 6 years after the remittitur issued in his direct appeal from the judgment of conviction entered after the penalty phase retrial. *See* NRS 34.726(1) ("[A] petition that challenges the validity of a judgment or sentence must be filed within 1 year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within 1 year after the appellate court . . . issues its remittitur."). The petition included many grounds for relief that Chappell had waived because he could have raised them on direct appeal or in the previous postconviction petitions. NRS 34.810(1)(b)(2). The petition was also successive to the extent it alleged grounds for relief that had been considered on the merits in a prior proceeding, and it constituted

an abuse of the writ because it included new and different grounds for relief (i.e., grounds that had not been raised in the prior postconviction petitions). NRS 34.810(2). Therefore, Chappell's third petition was subject to multiple, mandatory procedural bars. *See State v. Eighth Judicial Dist. Court (Riker)*, 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005) ("Application of the statutory procedural default rules to post-conviction habeas petitions is mandatory.").

To avoid dismissal based on those procedural bars, Chappell had to demonstrate good cause and prejudice, save for certain narrow exceptions addressed below at pp. 36-38. *See* NRS 34.726(1); NRS 34.810(1)(b), (3). "In order to demonstrate good cause, a petitioner must show that an impediment external to the defense prevented him or her from complying with the state procedural default rules." *Hathaway v. State*, 119 Nev. 248, 252, 71 P.3d 503, 506 (2003). "An impediment external to the defense may be demonstrated by a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials, made compliance impracticable." *Id.* (internal quotation marks omitted). "To establish prejudice, a petitioner must show not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage . . . ." *State v. Powell*, 122 Nev. 751, 756, 138 P.3d 453, 456 (2006) (internal quotation marks omitted).

Chappell claims he demonstrated good cause and prejudice based on ineffective assistance of postconviction counsel, referring to both first postconviction counsel (Schieck) and second postconviction counsel (Oram). Ineffective assistance of postconviction counsel can constitute good cause for an untimely and successive petition where postconviction counsel

was appointed as a matter of right, if the postconviction-counsel claim is not itself untimely and therefore procedurally barred. *See generally Rippo v. State*, 134 Nev. 411, 423 P.3d 1084 (2018) (discussing procedural bars and availability of a postconviction-counsel claim as good cause and prejudice); *see also Lisle v. State*, 131 Nev. 356, 360, 351 P.3d 725, 728 (2015) (stating that a good-cause claim based on a *Brady* violation must be raised within a reasonable time after the claim became available); *State v. Huebler*, 128 Nev. 192, 198 n.3, 275 P.3d 91, 95 n.3 (2012) (same); *Riker*, 121 Nev. at 235, 112 P.3d at 1077 (explaining that a postconviction-counsel claim is not "immune to other procedural default [statutes]" such as NRS 34.726); *Hathaway*, 119 Nev. at 252-53, 71 P.3d at 506 (explaining that ineffective-assistance claim asserted as good cause "itself must not be procedurally defaulted" and thus must be raised in a timely fashion). The first question, then, is whether Chappell timely raised his good-cause claims based on ineffective assistance of postconviction counsel, which requires a showing that he raised those claims within a reasonable time after they became available. *Rippo*, 134 Nev. at 419-22, 423 P.3d at 1095-97 (discussing the time bar set forth in NRS 34.726 as applied to a postconviction-counsel claim that is asserted as good cause to obtain review of other procedurally barred grounds for relief). A postconviction-counsel claim is raised within a reasonable time and therefore is not itself procedurally barred when it is raised within one year of "the conclusion of the postconviction proceedings in which the ineffective assistance allegedly occurred." *Id.* at 420, 423 P.3d at 1096. Thus, the postconviction-counsel claim must be raised within one year after entry of a final written decision by the district court resolving all the grounds in the petition or, if a timely appeal was taken, the issuance of the appellate court's remittitur. *Id.* at 421, 423 P.3d at 1096.

*Chappell did not timely raise the good-cause claims based on ineffective assistance of first postconviction counsel*

Chappell claims first postconviction counsel's ineffectiveness provides good cause for him to raise procedurally barred grounds for relief from the conviction (i.e., grounds related to the guilt phase of the 1996 trial and the subsequent direct appeal). He contends that the third petition provided the first opportunity to pursue those postconviction-counsel claims and that he filed that petition within a reasonable time after those claims became available. We disagree.

The remittitur in Chappell's first postconviction appeal issued on May 2, 2006. Any good-cause claim based on first postconviction counsel's ineffectiveness became available on that date. Thus, Chappell had one year from May 2, 2006, to assert first postconviction counsel's ineffectiveness as good cause to raise procedurally barred challenges to his conviction. Having missed that deadline by almost a decade, Chappell urges us to hold that the first-postconviction-counsel claims were not available until November 17, 2015, when the remittitur issued on appeal from the order denying his second postconviction habeas petition, in which Chappell challenged the death sentence imposed at the penalty phase retrial. We find Chappell's arguments unpersuasive.

First, relying on *Johnson v. State*, 133 Nev. 571, 402 P.3d 1266 (2017), Chappell argues that after he obtained relief from the original death sentence, there was no judgment of conviction to challenge in a postconviction petition until the new judgment was entered after the penalty phase retrial. In *Johnson*, we held that there was no final judgment of conviction to trigger the one-year period outlined in NRS 34.726(1) until after a penalty phase retrial where the penalty phase retrial had been granted *on direct appeal*. *Id.* at 573-75, 402 P.3d at 1271-73. But here, the

SUPREME COURT
OF
NEVADA

(O) 1947A

penalty phase retrial was granted in a postconviction proceeding. Chappell's reliance on *Johnson* is therefore misplaced. Indeed, *Johnson* distinguished between cases where the death sentence was reversed on direct appeal and those where the death sentence was vacated in a postconviction proceeding. *Id.* at 575 n.1, 402 P.3d at 1273 n.1. As succinctly put by the California Supreme Court, when a capital defendant is granted a new penalty hearing on collateral review, "[t]he scope of [the] retrial is a matter of state procedure under which *the original judgment on the issue of guilt remains final during the retrial of the penalty issue* and during all appellate proceedings reviewing the trial court's decision on that issue." *People v. Kemp*, 517 P.2d 826, 828 (Cal. 1974) (emphasis added) (internal quotation marks omitted). We reached a similar conclusion on appeal from the judgment entered after the penalty phase retrial. In that appeal, Chappell tried to raise guilt-phase trial errors, arguing that his conviction was not yet final. Citing *Kemp* and other similar cases, we determined that the issue of Chappell's guilt was final on October 4, 1999, when the United States Supreme Court denied certiorari from our decision in *Chappell I. Chappell III*, 2009 WL 3571279, at *13.

Second, Chappell argues that if he had to file a petition raising the postconviction-counsel claims before the penalty phase retrial, related appeal, and postconviction challenges were complete, there would have been confusion about whether the petition would be subject to the special rules that apply to petitions filed by a person who is under a death sentence. His primary concern in this respect seems to be the appointment of postconviction counsel to assist with that petition. But there is no statutory right to appointed counsel to represent a petitioner who has filed a successive petition, even when the petitioner has been sentenced to death.

*See* NRS 34.820(1)(a) (mandating the appointment of postconviction counsel if the "petitioner has been sentenced to death and the petition is the *first one* challenging the validity of the petitioner's conviction or sentence" (emphasis added)). We therefore are not convinced that it would be unworkable in practice to require a person in Chappell's position to file a postconviction petition before a penalty phase retrial and related appellate and postconviction challenges are complete. *Cf. Johnson*, 133 Nev. at 574-75, 402 P.3d at 1272-73 (recognizing possible confusion as to whether the rules regarding statutorily appointed postconviction counsel for a petitioner who has been sentenced to death would apply to a first petition filed while the petitioner is facing a retrial of the penalty phase).

Third, Chappell argues that he could not raise his good-cause claims based on first postconviction counsel's performance earlier because first postconviction counsel (Schieck) continued to represent him in the penalty phase retrial and new postconviction counsel had not been appointed to represent him on a second postconviction petition. We again disagree. Schieck's continued representation of Chappell with respect to the penalty phase retrial and subsequent direct appeal did not impede Chappell's ability to file a second postconviction petition asserting that Schieck's ineffectiveness as first postconviction counsel provided good cause to raise procedurally barred challenges to the conviction. Because such a petition would have been a wholly separate proceeding from the penalty phase retrial, Chappell could have filed the second petition pro se and requested the appointment of counsel under NRS 34.750. And any adverse impact a second postconviction petition might have had on Schieck's performance during the penalty phase retrial could have been addressed in

the retrial proceedings or in a subsequent postconviction petition challenging the sentence imposed on retrial.

We acknowledge that parallel retrial and postconviction proceedings in these circumstances may be complicated. But we must weigh those complications against the "[p]assage of time, erosion of memory, and dispersion of witnesses" that would affect both a possible retrial of the issue of guilt and litigation of the second postconviction petition. *Groesbeck v. Warden*, 100 Nev. 259, 261, 679 P.2d 1268, 1269 (1984) (quoting *Engle v. Isaac*, 456 U.S. 107, 127-28 (1982)); *see also Rippo*, 134 Nev. at 420, 423 P.3d at 1095-96 (pointing to interest in finality of a criminal conviction as support for the conclusion that "a petitioner does not have an indefinite period of time to raise a postconviction-counsel claim"). And while we generally prefer to avoid piecemeal litigation, that preference similarly "must be counterbalanced against the interest in the finality of a conviction." *Witter v. State*, 135 Nev. 412, 416, 452 P.3d 406, 409 (2019). That balance tips toward finality in the circumstances presented here, given that piecemeal litigation is unavoidable when a penalty phase retrial is ordered on collateral review.

Consistent with *Rippo* and earlier cases, Chappell's good-cause claims based on first postconviction counsel's performance as to guilt-phase issues were available when the remittitur issued on appeal from the district court's order denying his first postconviction petition in that regard. Because Chappell filed the petition asserting those postconviction-counsel claims more than one year later, those claims were untimely and could not provide good cause. Accordingly, the district court did not err in denying the petition as to the asserted grounds for relief related to the issue of

SUPREME COURT
OF
NEVADA

(O) 1947A

Chappell's guilt because those grounds are procedurally barred under NRS 34.726(1), NRS 34.810(1)(b)(2), and NRS 34.810(2).

*Chappell timely raised good-cause claims based on second postconviction counsel's alleged ineffective assistance*

Chappell claims that counsel's ineffectiveness during the second postconviction proceeding provides good cause to raise procedurally barred grounds for relief from the death sentence imposed during the penalty phase retrial.[2] These good-cause claims were raised within one year after they became available (i.e., when remittitur issued on appeal from the order denying the second postconviction petition). Thus, Chappell has "met the first component of the good-cause showing required under NRS 34.726(1)." *Rippo*, 134 Nev. at 422, 423 P.3d at 1097. But to satisfy the second component of the showing required under NRS 34.726(1)(b)—undue prejudice—and the cause-and-prejudice showings required under NRS

---

[2]Chappell also argues that second postconviction counsel's ineffectiveness excuses any delay in raising good-cause claims based on first postconviction counsel's ineffectiveness. He is wrong. The appointment of second postconviction counsel (Oram) was statutorily mandated only because that petition was the first one challenging the validity of the death sentence imposed at the penalty phase retrial. *See* NRS 34.820(1)(a) (requiring the district court to appoint postconviction counsel "[i]f a petitioner has been sentenced to death and the petition is the first one challenging the validity of the petitioner's conviction or sentence"). Because Chappell did not have a right to appointed postconviction counsel for a second challenge to his conviction, second postconviction counsel's acts or omissions do not provide good cause to excuse the delay in asserting first postconviction counsel's ineffectiveness. *See Brown v. McDaniel*, 130 Nev. 565, 569 & n.1, 331 P.3d 867, 870 & n.1 (2014) (reiterating that "[w]here there is no right to counsel there can be no deprivation of effective assistance of counsel" and that death-penalty defendants are entitled to effective assistance of appointed counsel in first postconviction proceedings (alteration in original) (internal quotation marks omitted)).

34.810(1)(b) and NRS 34.810(3), Chappell also had to *prove* that second postconviction counsel was ineffective. *Id.* at 422, 425, 423 P.3d at 1097, 1099. We turn then to the substance of Chappell's claims regarding second postconviction counsel's performance.

*Chappell's claims that second postconviction counsel provided ineffective assistance lack merit*

We have adopted the *Strickland* test "to evaluate postconviction counsel's performance where there is a statutory right to effective assistance of that counsel." *Id.* at 423, 423 P.3d at 1098; *see generally Strickland v. Washington*, 466 U.S. 668 (1984). Thus, to prove that second postconviction counsel was ineffective, Chappell had to show "(1) that counsel's performance was deficient and (2) that counsel's deficient performance prejudiced [him]." *Rippo*, 134 Nev. at 423, 423 P.3d at 1098. Both showings are required. *Id.* The inquiry on the first prong focuses on whether postconviction counsel's performance fell below an objective standard of reasonableness. *See id.* at 438, 423 P.3d at 1108 (indicating that postconviction counsel's performance is not deficient if it comes within "the wide range of reasonable professional assistance" (quoting *Strickland*, 466 U.S. at 689)). The inquiry on the second prong focuses on whether the "deficient performance prevented [Chappell] from establishing . . . that the sentence was imposed, in violation of the Constitution of the United States or the Constitution or laws of this State." *Id.* at 424, 423 P.3d at 1099 (recognizing that "the question is more than whether the first post-conviction relief proceeding should have gone differently" (internal quotation marks omitted)).

Before evaluating Chappell's postconviction-counsel claims under the *Strickland* test, we find it necessary to address the level of specificity required when pleading such claims in a postconviction petition

SUPREME COURT
OF
NEVADA

(O) 1947A

12

and arguing them on appeal. NRS Chapter 34 requires a petitioner to identify the applicable procedural bars for *each* claim presented and the good cause that excuses those procedural bars. *See* NRS 34.735 (outlining the form for a postconviction habeas petition, questions 17-19); *see also* NRS 34.726(1) (requiring a petitioner to show cause for the delay in filing a petition and undue prejudice); NRS 34.810(3) (providing that "*the petitioner has the burden of pleading* and proving *specific facts that demonstrate* . . . [g]*ood cause* for the petitioner's failure to present the claim or for presenting the claim again[ ] *and* . . . [a]*ctual prejudice* to the petitioner" (emphases added)). And a petitioner's explanation of good cause and prejudice for each procedurally barred claim must be made on the face of the petition. *See State v. Haberstroh*, 119 Nev. 173, 181, 69 P.3d 676, 681 (2003). Thus, to avoid dismissal under NRS 34.726(1) or NRS 34.810, a petitioner "cannot rely on conclusory claims for relief but must provide supporting specific factual allegations that if true would entitle him to relief." *Riker*, 121 Nev. at 232, 112 P.3d at 1075; *see also Haberstroh*, 119 Nev. at 181, 69 P.3d at 681; *Bejarano v. Warden*, 112 Nev. 1466, 1471, 929 P.2d 922, 925 (1996). This pleading requirement is nothing new. *See, e.g., Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984) (requiring a postconviction petitioner to assert more than bare or naked allegations but rather specific factual allegations, not belied or repelled by the record, that would entitle him or her to relief if true).

The specificity required to plead an ineffective-assistance claim as good cause is further reflected in the *Strickland* standard. In particular, courts must presume that counsel performed effectively, and "[t]o overcome this presumption, a petitioner must do more than baldly assert that his attorney could have, or should have, acted differently." *Johnson*, 133 Nev.

SUPREME COURT
OF
NEVADA

(O) 1947A

at 577, 402 P.3d at 1274. "Instead, he must *specifically explain* how his attorney's performance was objectively unreasonable . . . ." *Id.* (emphasis added); *see also Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."). When it comes to postconviction-counsel claims in particular, conclusory or general assertions of deficient performance are insufficient because "the mere omission of a claim developed by new counsel does not raise a presumption that prior [postconviction] counsel was incompetent, or warrant consideration of the merits of a successive petition." *In re Reno*, 283 P.3d 1181, 1210 (Cal. 2012) (internal quotation marks omitted), *quoted with approval in Rippo*, 134 Nev. at 429, 423 P.3d at 1102. Similarly, a petitioner must specifically articulate how counsel's deficient performance prejudiced him or her. *See Riley v. State*, 110 Nev. 638, 649, 878 P.2d 272, 279 (1994) (rejecting an ineffective-assistance claim where the petitioner did not "articulate prejudice in a persuasive manner" because he or she failed "to present an argument demonstrating the type and strength of evidence that might have been presented, and that there exists a reasonable probability that presentation of the evidence would have resulted in a different outcome at trial"). We have reiterated these requirements when reviewing ineffective-assistance claims on appeal, making it clear that a petitioner's appellate briefs must address ineffective-assistance claims with specificity, not just "in a *pro forma*, perfunctory way" or with a "conclusory[ ] catchall" statement that counsel provided ineffective assistance. *Evans v. State*, 117 Nev. 609, 647, 28 P.3d 498, 523 (2001), *overruled on other grounds by Lisle*, 131 Nev. at 366 n.5, 351 P.3d at 732 n.5.

To satisfy those specificity requirements, a petitioner arguing good cause and prejudice in a capital case based on the ineffective assistance of postconviction counsel must specifically plead in the petition and explain in any appellate briefs how postconviction counsel's performance was objectively unreasonable and how postconviction counsel's acts or omissions prejudiced the petitioner in the prior postconviction proceeding. The merits of the procedurally barred grounds for relief may play an integral part in pleading and arguing good cause and prejudice based on the ineffective assistance of postconviction counsel. *See Rippo*, 134 Nev. at 424, 423 P.3d at 1098 (recognizing that "when a petitioner presents a claim of ineffective assistance of postconviction counsel on the basis that postconviction counsel failed to prove the ineffectiveness of his trial or appellate attorney, the petitioner must prove the ineffectiveness of both attorneys"). But the petitioner cannot satisfy his or her burden to plead and argue postconviction counsel's ineffectiveness with specificity by focusing solely on the merits of the procedurally barred grounds for relief.

With these principles in mind, we consider whether Chappell proved that second postconviction counsel (Oram) provided ineffective assistance. In doing so, we address the merits of the procedurally barred grounds for relief only to the extent that they are intertwined with the merits of the postconviction-counsel claim asserted as good cause and prejudice. And to the extent that we address the merits of any postconviction-counsel claims that lack the required specificity in pleading or appellate argument, we do so only as an alternative basis to deny relief.

*Failure to support claims related to evidence of Fetal Alcohol Spectrum Disorders*

Chappell argues that penalty phase counsel should have presented evidence of Fetal Alcohol Spectrum Disorders (FASD) and of

Chappell's irreversible brain damage due to prenatal exposure to alcohol and drugs. The second postconviction petition included a claim regarding FASD that the district court and this court rejected on the merits. To overcome the procedural bars to raising that claim again, Chappell argues that second postconviction counsel did not support the claim with readily available evidence, did not support his request for an investigator and funding with sufficiently specific arguments to establish necessity, and should have presented the claim in a more compelling manner.

The district court conducted an evidentiary hearing on this claim. Second postconviction counsel testified that he requested funding for a PET scan and for an FASD expert, using uncontroverted information that Chappell's mother had been addicted to drugs and alcohol to support the request. Counsel recollected the State's argument that FASD would not have made a difference to the jury and his counterargument that he needed to retain an expert because penalty phase counsel had not looked into FASD. Second postconviction counsel recalled that the district court denied the request as bare and conclusory and that, while he believed FASD was an important enough topic to raise in the petition, he focused more on challenging the sole aggravating circumstance so that Chappell would be ineligible for the death penalty. The district court concluded that penalty phase counsel presented most of the evidence Chappell hoped to introduce about an FASD diagnosis during the penalty phase retrial and therefore rejected Chappell's postconviction-counsel claim.

Chappell argues that the district court erred because the jury did not hear evidence about FASD and resulting brain damage, evidence he contends is fundamentally different from any other evidence presented during the penalty phase retrial because it could have explained his actions.

We disagree. As we noted on appeal from the order denying the second postconviction petition, penalty phase counsel presented extensive evidence of Chappell's cognitive deficits at the penalty phase retrial and the jury determined that the evidence was not sufficiently mitigating. *Chappell IV*, 2015 WL 3849122, at *2. Thus, we concluded that Chappell had not shown deficient performance or prejudice due to penalty phase counsel's failure to further investigate FASD. *Id.* Likewise here, Chappell fails to show prejudice due to second postconviction counsel's performance where the omitted information merely supplements what the jury heard during the penalty phase retrial: that Chappell suffered from substance abuse, was born to a mother addicted to drugs and alcohol, and suffered a learning disability. One expert explained during the penalty phase retrial that Chappell had less free will than the average person. That same expert noted Chappell's placement in special-education classes as early as second grade, his lack of early success in school, his behaviors that were atypical of a second grader, and his classification "as severely learning disabled" in fourth grade. Additionally, the expert explained that those with a low verbal IQ, such as Chappell, were overrepresented in the prison population because they have trouble problem solving and making good decisions. Lastly, the expert testified that Chappell's low verbal IQ, difficult childhood, constant drug use, and diagnosed personality disorder(s) negatively affected his free will. Thus, the jury heard evidence that Chappell had cognitive deficits and that those deficits, along with Chappell's upbringing, resulted in diminished free will and difficulty with decision-making. Information regarding FASD may have explained the *cause* of Chappell's cognitive deficits, but we are not convinced that the cause of those deficits would have been more compelling than the deficits themselves. Therefore, Chappell

has not demonstrated that he would have been granted relief had second postconviction counsel handled the FASD claim differently. Accordingly, the district court did not err in rejecting this claim as procedurally barred.[3]

### Failure to raise grounds for relief based on ineffective assistance during jury selection at the penalty phase retrial

Chappell raises multiple procedurally barred grounds for relief related to jury selection at the penalty phase retrial, claiming that second postconviction counsel provided ineffective assistance by omitting them from the prior petition. He first argues that the State used two of its peremptory strikes in a racially biased manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). In his appellate brief, Chappell summarily alleges in a footnote that "post-conviction counsel was ineffective for failing to challenge [penalty phase] counsel's effectiveness on this basis."[4] The pleading below fares no better, as it simply identified the procedurally barred ground for relief, along with a list of others, and summarily alleged that it was not "raised previously due to ineffective assistance of . . . state post-conviction counsel." Chappell's appellate arguments and pleading below are deficient. Beyond those deficiencies, Chappell has not shown second postconviction counsel's omission of the *Batson* claim was

---

[3]Chappell alternatively contends that the district court's denial of second postconviction counsel's request for funding and for an evidentiary hearing provides good cause because that decision precluded him from discovering the factual and legal bases for some of his grounds for relief. Any issues related to the district court's decisions in the second postconviction proceeding could have been raised in the second postconviction appeal, *see* NRS 34.810(1)(b), and Chappell does not demonstrate good cause for his failure to do so, *see* NRS 34.810(3).

[4]Chappell's reply brief adds scarcely more, as he offers a perfunctory assertion that second postconviction counsel's failure to raise a *Batson* claim "amounted to prejudicial, deficient performance."

unreasonable, as Chappell does not point to another juror who expressed a doubt as to the ability to be fair like prospective Juror Mills did or who was as inconsistent and equivocal in expressing hesitations about the death penalty as prospective Juror Theus was or other evidence to show the challenges were exercised based on discrimination. *See Ford v. State*, 122 Nev. 398, 405, 132 P.3d 574, 578-79 (2006) (identifying one category of circumstantial evidence that is probative of the prosecutor's intent as "the similarity of answers to voir dire questions given by African-American prospective jurors who were struck by the prosecutors and answers by nonblack prospective jurors who were not struck"). Thus, Chappell did not demonstrate cause and prejudice. Accordingly, the district court did not err in denying the underlying claim as procedurally barred without conducting an evidentiary hearing.

Next, Chappell claims that penalty phase counsel should have challenged several biased veniremembers who ultimately were seated on the jury for the penalty phase retrial. To excuse the procedural bars to that claim, Chappell alleges that second postconviction counsel provided ineffective assistance by omitting it. But once again, Chappell's pleading and appellate argument regarding second postconviction counsel's ineffectiveness are deficient. We have found no assertions about second postconviction counsel's performance specifically related to this penalty-phase-counsel claim in Chappell's appellate briefing.[5] The pleading below is similarly deficient. Additionally, Chappell averred in his petition both

_____

[5]Although Chappell's opening brief includes a section that generally asserts second postconviction counsel's ineffectiveness as good cause and prejudice, the allegations in that section—save for those surrounding the FASD claim, addressed *supra*—are bare and conclusory.

SUPREME COURT
OF
NEVADA

(O) 1947A

that he was raising the penalty-phase-counsel claim again "because state post-conviction counsel failed to adequately develop, present, or demonstrate prejudice" and that he was raising the penalty-phase-counsel claim as a new ground for relief "due to ineffective assistance of . . . state post-conviction counsel." This contradictory pleading is problematic—the penalty-phase-counsel claim is either new or it is not. *See* NRS 34.735 (postconviction habeas petition form, questions 17-18, requiring a petitioner to identify, among other things, which claims are re-raised and which are new); *cf. Reno*, 283 P.3d at 1196 (requiring petitioners to submit a table or chart to identify which claims are re-raised and which are new). A reviewing court, and a responding party, should not be expected to scour a voluminous petition and record in an effort to ascertain whether a particular ground for relief has been raised in a prior postconviction petition. Beyond those pleading and briefing deficiencies, Chappell has not shown second postconviction counsel acted unreasonably in omitting this claim, as he has not demonstrated that the challenged jurors were biased and therefore has not shown good cause and actual prejudice. We conclude the district court did not err in denying this claim as procedurally barred without conducting an evidentiary hearing.

Chappell next claims that the trial court erroneously denied his for-cause challenges of three veniremembers who did not serve on the jury during the penalty phase retrial. To excuse the procedural bars to that claim, Chappell relies on ineffective assistance of second postconviction counsel in omitting it. But again, Chappell's appellate argument and pleading are deficient. There is no specific argument about second postconviction counsel's performance related to this claim in Chappell's appellate briefs. The petition includes this claim as part of a larger

SUPREME COURT
OF
NEVADA

(O) 1947A

20

allegation that is inconsistent as to whether the claim is new and not specific about how second postconviction counsel's performance was deficient or prejudiced Chappell. Chappell also did not sufficiently identify which facts supporting this claim are new and which have been previously considered. *See Moore v. State*, 134 Nev. 262, 264, 417 P.3d 356, 359 (2018) (recognizing that, where a petitioner claims new facts provide good cause for a successive claim, the petitioner must "identify with specificity which facts this court previously considered and which facts are new"). Beyond the deficiencies in Chappell's pleading and appellate argument, the record reveals an objectively reasonable basis for second postconviction counsel to have omitted the underlying claim: it would have been barred by the law-of-the-case doctrine because it was raised on direct appeal and rejected on the merits, *Chappell III*, 2009 WL 3571279, at *5. *See Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975) (recognizing that "[t]he law of a first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same" and that "[t]he doctrine of the law of the case cannot be avoided by a more detailed and precisely focused argument" (internal quotation marks omitted)). Although the law-of-the-case doctrine can sometimes be avoided, *see Hsu v. Cty. of Clark*, 123 Nev. 625, 630-31, 173 P.3d 724, 729 (2007) (recognizing reasons for law of the case to be avoided), the record does not clearly reveal any reasons to reconsider the law of the case here, particularly given our caselaw that would have made it impossible for second postconviction counsel to demonstrate prejudice because none of the purportedly biased veniremembers were seated, *see Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005) ("If the jury actually seated is impartial, the fact that a defendant had to use a peremptory challenge to achieve that result does not mean that the

Supreme Court
of
Nevada

(O) 1947A

21

defendant was denied his right to an impartial jury."). We therefore conclude the district court did not err in denying this trial-error claim as procedurally barred without conducting an evidentiary hearing.

Last, Chappell claims that penalty phase counsel did not attempt to rehabilitate death-scrupled veniremembers. Again, Chappell relies on ineffective assistance of second postconviction counsel to overcome the procedural bars to this claim, but his pleadings below do not specifically allege how postconviction counsel's performance was deficient. And although the petition includes conflicting assertions as to whether the underlying ground for relief was new, it appears Chappell had not raised the claim regarding juror rehabilitation in any prior proceeding. Beyond the deficiencies in Chappell's pleading and appellate argument, the record reveals an objectively reasonable basis for second postconviction counsel to omit the underlying claim: it lacked merit, given that it did not focus on the jurors who were actually seated. *See Weber v. State*, 121 Nev. 554, 581, 119 P.3d 107, 125 (2005) ("Any claim of constitutional significance must focus on the jurors who were actually seated, not on excused jurors."), *overruled on other grounds by Farmer v. State*, 133 Nev. 693, 405 P.3d 114 (2017). We therefore conclude the district court did not err in denying this penalty-phase-counsel claim as procedurally barred without conducting an evidentiary hearing.

> *Failure to raise grounds for relief based on evidence of Chappell's traumatic childhood*

Chappell argues that penalty phase counsel did not investigate and present evidence of his traumatic childhood. Specifically, Chappell claims that penalty phase counsel should have presented more evidence about his family history of substance abuse and mental illness; the abuse, neglect, and loss he suffered while living with his grandmother; the poverty-

SUPREME COURT
OF
NEVADA

(O) 1947A

stricken neighborhood where he spent his childhood; the brain damage he suffered due to prenatal exposure to drugs and alcohol; and his use of drugs to escape reality. To overcome the procedural bars to this penalty-phase-counsel claim, Chappell asserted that second postconviction counsel provided ineffective assistance in omitting it. But his pleadings below omitted anything specific about second postconviction counsel's performance in this respect and did not clearly indicate whether the underlying claim was new or had been raised in a prior proceeding. In his appellate briefs, Chappell's arguments about second postconviction counsel's performance in omitting this claim are limited to catchall statements that counsel failed to investigate readily available witnesses to discover the evidence and failed to do any extra-record investigation. Beyond the deficiencies in the pleadings and appellate argument, the record reveals objectively reasonable grounds for second postconviction counsel to have omitted the penalty-phase-counsel claim. First, penalty phase counsel's omission did not prejudice Chappell. One or more jurors found several mitigating circumstances that covered the subjects identified in this penalty-phase-counsel claim, including that Chappell (1) suffered from substance abuse, (2) had no father figure in his life, (3) was raised in an abusive household, (4) was the victim of physical abuse as a child, (5) was born to a mother addicted to drugs and alcohol, (6) suffered a learning disability, and (7) was raised in a depressed housing area. Cumulative evidence on the same subjects would not have had a reasonable probability of altering the jury's determination that the mitigating circumstances did not outweigh the aggravating circumstance. *Cf. Cullen v. Pinholster*, 563 U.S. 170, 200 (2011) (concluding there was no reasonable probability that "new" mitigation evidence would have changed the jury's verdict, in part

because "[t]he 'new' evidence largely duplicated the mitigation evidence at trial"); *Atkins v. Virginia*, 536 U.S. 304, 321 (2002) (recognizing that mitigating evidence "can be a two-edged sword that" juries might find to show future dangerousness). Second, postconviction counsel pursued an objectively reasonable strategy focused on eliminating the single aggravating circumstance that, if successful, would have made Chappell ineligible for the death penalty. *See Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."), *cited with approval in Smith v. Robbins*, 528 U.S. 259, 288 (2000); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) ("[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."); *see also Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004) (observing that strategic decisions are "virtually unchallengeable absent extraordinary circumstances" (internal quotation marks omitted)). We therefore conclude that the district court did not err in denying this penalty-phase-counsel claim as procedurally barred without conducting an evidentiary hearing.

Chappell also summarily suggests that penalty phase counsel should have presented witnesses at the penalty phase retrial that counsel identified in the first postconviction petition. But second postconviction counsel *did* raise that claim, and this court rejected it. *Chappell IV*, 2015 WL 3849122, at *2. Chappell has not explained in his petition below or his appellate briefing how second postconviction counsel's performance was deficient or prejudiced him in litigating this penalty-phase-counsel claim. And Chappell has not provided any cogent argument to overcome the

SUPREME COURT
OF
NEVADA

(O) 1947A

doctrine of the law of the case. *See Hall*, 91 Nev. at 315-16, 535 P.2d at 798-99; *see also Hsu*, 123 Nev. at 630-31, 173 P.3d at 729. Accordingly, we conclude the district court did not err in denying this penalty-phase-counsel claim as procedurally barred without conducting an evidentiary hearing.

*Failure to present expert witnesses*

Chappell argues that penalty phase counsel should have investigated and presented evidence of his addiction to drugs through an addiction expert, of the effects of drugs on the brain through a neuropharmacologist, and of his childhood through an expert on trauma. He again relies on the ineffective assistance of second postconviction counsel to overcome the procedural bars to this claim. But in the petition filed below, Chappell did not specifically allege how second postconviction counsel performed deficiently with respect to investigating and retaining expert witnesses. And in his appellate briefing, Chappell acknowledges that counsel hired some experts but broadly asserts that more were needed. Beyond these deficiencies in the pleadings and appellate argument, the record reveals an objectively reasonable basis for second postconviction counsel to omit this penalty-phase-counsel claim: penalty phase counsel's omission did not prejudice the defense. A defense expert testified in the desired manner at the penalty phase retrial, telling the jury that Chappell became dependent on cocaine at a young age and that regular use of the drug may cause paranoid delusions and psychosis and result in uncontrollable behaviors and thoughts. And one or more jurors found *as a mitigating circumstance* that Chappell suffered from substance abuse. Thus, the jury was able to and did consider Chappell's substance abuse as a mitigating circumstance without additional testimony from an addiction expert or neuropharmacologist. And because the jury also heard evidence about Chappell's traumatic childhood, we are not convinced there is a

Supreme Court
OF
Nevada

(O) 1947A

reasonable probability that an expert's testimony about how the trauma impacted the course of Chappell's life would have altered the jurors' sentencing decision. *See Pinholster*, 563 U.S. at 201; *Atkins*, 536 U.S. at 321. Under these circumstances, Chappell has not demonstrated that second postconviction counsel provided ineffective assistance by omitting this penalty-phase-counsel claim. Accordingly, we conclude the district court did not err by denying this penalty-phase-counsel claim as procedurally barred without conducting an evidentiary hearing.

*Failure to prepare witnesses*

Chappell argues that penalty phase counsel did not adequately prepare witnesses to testify during the penalty phase retrial. He again summarily points to second postconviction counsel's alleged ineffective assistance to overcome the procedural bars to this claim without pleading below or arguing on appeal any specifics about second postconviction counsel's performance in this respect. Beyond the deficiencies in the pleadings and appellate argument, the record belies in part the cause-and-prejudice claim based on second postconviction counsel's performance. Specifically, second postconviction counsel argued that penalty phase counsel failed to prepare expert witnesses Dr. Lewis Etcoff, Dr. William Danton, and Dr. Todd Grey and lay witness Benjamin Dean to testify at the penalty phase retrial, but this court concluded that penalty phase counsel was not ineffective.[6] *Chappell IV*, 2015 WL 3849122, at *3-4. The record also reveals an objectively reasonable ground for second postconviction

---

[6]This court's decision on the penalty-phase-counsel claim in *Chappell IV* is the law of the case. *See Hall*, 91 Nev. at 315-16, 535 P.2d at 798-99. Chappell does not identify any basis to reconsider the law of the case on that claim. *See Hsu*, 123 Nev. at 630-31, 173 P.3d at 729.

counsel to omit another aspect of this penalty-phase-counsel claim: the allegation that counsel did not adequately prepare Chappell to testify was procedurally barred because it implicated trial counsel's performance in the first trial.[7] And finally, as for the remaining witnesses, Chappell has not presented cogent argument that the State was able to discredit those witnesses because penalty phase counsel did not adequately prepare them to testify, see *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987), nor has he shown prejudice due to penalty phase counsel's failure to adequately prepare those witnesses. For these reasons, we conclude the district court did not err by denying this penalty-phase-counsel claim as procedurally barred without conducting an evidentiary hearing.

*Failure to object to prosecutorial misconduct*[8]

Chappell complains about multiple instances of alleged prosecutorial misconduct, claiming that penalty phase counsel should have objected. To overcome the procedural bars to this claim, Chappell asserts

---

[7]This aspect of the penalty-phase-counsel claim implicates trial counsel's performance because it was Chappell's testimony from the 1996 trial that the jury heard during the penalty phase retrial; Chappell did not take the stand during the penalty phase retrial.

[8]To the extent Chappell alleges good cause because the State withheld material impeachment evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), he did not adequately plead the claim. The burden is on Chappell "to identify with specificity which facts this court previously considered and which facts are new" and to "explain why he is raising [the] claim again, or if it is new, why he did not raise it sooner." *Moore*, 134 Nev. at 264, 417 P.3d at 359. But Chappell has not specified what facts are new, when he discovered this alleged *Brady* violation, and why this claim should excuse the procedural bars. Therefore, the district court did not err by denying this claim as procedurally barred without conducting an evidentiary hearing. *See State v. Bennett*, 119 Nev. 589, 599, 81 P.3d 1, 8 (2003) (outlining good cause and prejudice requirements for a *Brady* claim).

SUPREME COURT
OF
NEVADA

(O) 1947A

that second postconviction counsel provided ineffective assistance. But once again, he did not plead in his petition how second postconviction counsel's performance was deficient, and his appellate briefing is similarly deficient with catchall contentions that second postconviction counsel failed to effectively raise this penalty-phase-counsel claim in the previous postconviction petition. Beyond these deficiencies in the pleadings and appellate argument, the record belies the arguments about second postconviction counsel in part and reveals objectively reasonable grounds for second postconviction counsel to omit other parts of this penalty-phase-counsel claim. First, second postconviction counsel raised some of the prosecutorial misconduct arguments; this court rejected them. *Chappell IV*, 2015 WL 3849122, at *5 (rejecting Chappell's argument that counsel should have objected to the prosecution describing him "as 'a despicable human being' who 'chose evil'" and concluding that there was no prejudice from the prosecutor's improper impeachment of Fred Dean). And it was objectively reasonable for second postconviction counsel to omit the underlying allegations of prosecutorial misconduct that had been raised and rejected on direct appeal after the penalty phase retrial, *see Chappell III*, 2009 WL 3571279, at *11-12 (rejecting Chappell's claim of prosecutorial misconduct based on arguments about comparative worth, justice for the victim and the State, no mercy for Chappell, the jury not being "conned," and the role of mitigating circumstances), given that this court's decision in *Chappell III* established the law of the case as to those allegations. *See Hall*, 91 Nev. at 315-16, 535 P.2d at 798-99; *see also Hsu*, 123 Nev. at 630-31, 173 P.3d at 729.

And finally, as to the underlying allegations of prosecutorial misconduct that have not been previously considered, Chappell asserts the prosecutor disparaged the defense by characterizing it as an attempt to blame Chappell's upbringing for the crimes and making sarcastic comments. As we previously held the State was allowed to rebut evidence of Chappell's childhood, mental impairment, and character and the State properly commented that Chappell's past "did not take away his actions," see *Chappell III*, 2009 WL 3571279, at *12 (internal quotation marks omitted), and as the comments went to the State's point of view as to the incredulity of the defense, *cf. Ross v. State*, 106 Nev. 924, 927, 803 P.2d 1104, 1106 (1990) ("It was within the parameters of proper argument to point out to the jury that [a witness's] testimony might be incredible."), Chappell has not shown second postconviction counsel acted unreasonably in omitting this claim. Regarding Chappell's claim that the prosecutor improperly referenced the Holocaust,[9] the record reveals an objectively reasonable basis for second postconviction counsel to omit this penalty-phase-counsel claim: penalty phase counsel's omission did not prejudice the defense. In reviewing the death sentence on appeal after the penalty phase retrial, we referenced evidence that Chappell had supported his drug habit for nearly a decade by stealing from the victim and their children; he also beat the victim during this same time frame. After Chappell was

---

[9]On appeal, Chappell also alleges that the prosecutor compared the victim's life living with Chappell to Anne Frank's life during the Holocaust. Because Chappell did not cogently raise this specific allegation in district court, we will not consider it for the first time on appeal. *See State v. Wade*, 105 Nev. 206, 209 n.3, 772 P.2d 1291, 1293 n.3 (1989). Even were we to overlook this pleading defect, Chappell's claim is not clearly borne out by the record, as the prosecutor never mentioned Frank's name nor the Holocaust in the challenged quotation.

mistakenly released from custody, he immediately went to the victim's home, where he stabbed her 13 times. While one or more jurors found 7 of the 13 alleged mitigating circumstances, we observed that the mitigating evidence waned when considered alongside the rebuttal evidence of Chappell's history of blaming others for his problems and behavior. Indeed, Chappell may have acknowledged killing the victim, but he continued to blame her, at least partially, for her own murder. Other evidence at the penalty phase retrial showed that Chappell had an overall indifference to others' well-being and that he had a lengthy criminal history, including crimes of domestic violence. Under these circumstances, Chappell has not proven that second postconviction counsel provided ineffective assistance by omitting this penalty-phase-counsel claim. Accordingly, we conclude the district court did not err in denying this penalty-phase-counsel claim as procedurally barred without conducting an evidentiary hearing.

*Failure to object during penalty phase retrial*

Chappell claims that penalty phase counsel should have made various objections during the penalty phase retrial. To overcome the procedural bars, he asserts that second postconviction counsel provided ineffective assistance. But his pleadings filed below and his appellate briefing provide no specifics as to second postconviction counsel's performance in this regard or how it was unreasonable.[10] And the petition indicates that Chappell was re-raising this penalty-phase-counsel claim and raising it for the first time without identifying which parts of the claim were

---

[10]In his appellate briefing, Chappell presents no cogent argument related to his allegations about unrecorded bench conferences and gruesome photographs. We therefore do not address them. *See Maresca*, 103 Nev. at 673, 748 P.2d at 6.

Supreme Court
of
Nevada

(O) 1947A

successive and which were new. Our review of the record reveals that Chappell raised some of the allegations in his direct appeal after the penalty phase retrial and this court rejected them. *Chappell III*, 2009 WL 3571279, at *6-7 (rejecting claims that hearsay testimony and old presentence investigation reports were erroneously admitted). Because the decision in *Chappell III* establishes the law of the case as to those issues, *see Hall*, 91 Nev. at 315-16, 535 P.2d at 798-99, second postconviction counsel had an objectively reasonable basis to omit a penalty-phase-counsel claim based on them. Second postconviction counsel raised another allegation in this penalty-phase-counsel claim as an appellate-counsel claim, *see Chappell IV*, 2015 WL 3849122, at *4 (rejecting claim "that appellate counsel was ineffective for failing to argue that the victim-impact evidence was unfairly cumulative"), thus rebutting the claim that second postconviction counsel omitted that allegation. The remaining allegations in this penalty-phase-counsel claim (failure to object to prosecutorial misconduct, jury instructions, prospective jurors who were allegedly biased, and improper impeachment of Fred Dean) are addressed and rejected elsewhere in this opinion in the context of other penalty-phase-counsel claims. For these reasons, we conclude the district could did not err in denying this penalty-phase-counsel claim as procedurally barred without conducting an evidentiary hearing.

*Failure to challenge jury instructions*

Chappell contends that penalty phase counsel did not object to erroneous jury instructions and that second postconviction counsel provided ineffective assistance by omitting related penalty-phase-counsel claims. Chappell argues that penalty phase counsel should have (1) asked the court to instruct the jury that the State had to prove beyond a reasonable doubt

SUPREME COURT
OF
NEVADA

(O) 1947A

31

that the mitigating circumstances did not outweigh the aggravating circumstances, (2) objected to an instruction that told the jury it had to unanimously find mitigating circumstances, and (3) objected to the instruction that told the jury "[a] verdict may never be influenced by prejudice or public opinion." He again made no specific allegations in the petition or his appellate briefing about second postconviction counsel's performance as to this penalty-phase-counsel claim, focusing instead on the merits of the underlying omitted claims. Beyond those deficiencies in his pleadings and appellate arguments, the record reveals an objectively reasonable ground for second postconviction counsel to omit these claims: they lacked merit. The first claim depends on a strained reading of *Hurst v. Florida*, 577 U.S. 92 (2016), that we have repeatedly rejected, *see, e.g.*, *Castillo v. State*, 135 Nev. 126, 442 P.3d 558 (2019), *cert. denied* ___ U.S. ___, 140 S. Ct. 2682 (2020); *Jeremias v. State*, 134 Nev. 46, 412 P.3d 43 (2018).[11] The second claim lacks merit because the trial court properly

---

[11]Chappell asks us to reconsider *Jeremias* and *Castillo* but provides no compelling reason to overrule this precedent. *See Armenta-Carpio v. State*, 129 Nev. 531, 535, 306 P.3d 395, 398 (2013). And to the extent he relies on *Hurst* as good cause to challenge the constitutionality of Nevada's capital sentencing statutes on the ground that they allow this court to act as a sentencer, his contention lacks merit. Nevada's death-penalty statutes abide by *Hurst*'s holding that "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. A jury's mere recommendation is not enough." 577 U.S. at 94; *see Jeremias*, 134 Nev. at 59, 412 P.3d at 54. As we have observed, *Hurst* does not mention appellate reweighing or harmless-error review and the United States Supreme Court has not overruled *Clemons v. Mississippi*, 494 U.S. 738 (1990), which permits both. *Castillo*, 135 Nev. at 131 n.2, 442 P.3d at 561 n.2. And more recently, the Supreme Court has acknowledged that "*Hurst* did not require jury weighing of aggravating and mitigating circumstances." *McKinney v. Arizona*, 589 U.S. ___, ___, 140 S. Ct. 702, 708 (2020).

instructed the jury that "[a] mitigating circumstance itself need not be agreed to unanimously" but that "[t]he entire jury must agree unanimously . . . as to whether the aggravating circumstances outweigh the mitigating circumstances." And as to the final claim, we have previously approved of the given instruction and have rejected the idea that it undermines the "right to have the jury consider all mitigating evidence" when "the jury was also instructed to consider any mitigating factors." *Byford v. State*, 116 Nev. 215, 233, 994 P.2d 700, 712 (2000). The trial court so instructed the jury in the penalty phase retrial. For these reasons, we conclude the district court did not err in denying this penalty-phase-counsel claim as procedurally barred without conducting an evidentiary hearing.

*Failure to challenge the death penalty*

Chappell raises numerous challenges to Nevada's death penalty scheme and his death sentence. He asserts that the penalty is applied in an arbitrary and capricious way, clemency is not practically available, and the total time on death row renders the sentence unconstitutional. He also contends that Nevada's system of electing judges renders his convictions and sentence invalid and that his severe mental illness renders him ineligible for execution.[12]

---

[12]While Chappell also challenges Nevada's lethal injection protocol, he acknowledges that his claim "falls outside the scope of a post-conviction petition for a writ of habeas corpus," *McConnell v. State*, 125 Nev. 243, 249, 212 P.3d 307, 311 (2009). To the extent Chappell argues this amounts to an unconstitutional suspension of the writ of habeas corpus, that argument is raised for the first time on appeal, and we therefore decline to consider it. *See Wade*, 105 Nev. at 209 n.3, 772 P.2d at 1293 n.3.

Chappell could have raised these claims on appeal from the judgment entered after the penalty phase retrial. By not raising them in that proceeding, Chappell waived these claims and must demonstrate good cause and actual prejudice to assert them now. NRS 34.810(1)(b). Although Chappell generically asserted ineffective assistance of second postconviction counsel to overcome that procedural bar, his petition did not include any specific allegations about counsel's performance in this respect. Instead, Chappell focused below and in his appellate briefing on the substance of the procedurally barred claims. Beyond the deficiencies in Chappell's pleadings and appellate arguments, the record reveals that second postconviction counsel did raise some of these challenges to the death sentence. *Chappell IV*, 2015 WL 3849122, at *1 n.1 (rejecting arguments that the death penalty is unconstitutional because state law does not genuinely narrow death eligibility, the death penalty is cruel and unusual, and executive clemency is not available). And second postconviction counsel had an objectively reasonable basis to omit the other, new arguments against the death penalty, given that "[t]his court has repeatedly upheld Nevada's death penalty against similar challenges," *Leonard v. State*, 117 Nev. 53, 83, 17 P.3d 397, 416 (2001) (listing cases); *see Nunnery v. State*, 127 Nev. 749, 782-83, 263 P.3d 235, 257 (2011) (rejecting claims that "Nevada's death penalty scheme does not narrow the class of persons eligible for the death penalty, [that] it constitutes cruel and unusual punishment, and [that] executive clemency is unavailable"); *see also McConnell v. State*, 125 Nev. 243, 256, 212 P.3d 307, 316 (2009) (rejecting claim of bias regarding elected judges who preside over capital proceedings); *Flanagan v. State*, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996) (rejecting contention that lengthy confinement before imposition of the death penalty

amounted to cruel and unusual punishment). Additionally, neither this court nor the United States Supreme Court has suggested that the severely mentally ill are ineligible for the death penalty. We therefore conclude the district court did not err in denying these claims as procedurally barred.

### Ineffective assistance of appellate counsel

Chappell claims appellate counsel who represented him in *Chappell III* (the direct appeal from the judgment entered after the penalty phase retrial) should have argued, or did not effectively argue, claims he raised elsewhere in the third petition. The allegations about appellate counsel's performance are vague. And Chappell has not sufficiently asserted that second postconviction counsel unreasonably omitted those appellate-counsel claims. We therefore conclude the district court did not err in denying the appellate-counsel claim as procedurally barred without conducting an evidentiary hearing.

### Cumulative error as good cause

Chappell argues that the district court should have considered several claims that he raised in his prior appeals and petitions so that it could take into account their cumulative effect alongside the claims presented in the third petition. This argument fails because the claims raised in the prior proceedings were rejected on the merits or as procedurally barred. A petitioner cannot turn to "cumulative error" in an effort to relitigate claims that the court has rejected on the merits or to reach the merits of claims that are procedurally barred. *See Rippo*, 134 Nev. at 436, 423 P.3d at 1107.

*Actual innocence*

Chappell contends that even if he has not demonstrated cause and prejudice, he can overcome the procedural bars based on actual innocence. To do so, Chappell had to "make[ ] a colorable showing [that] he is actually innocent of the crime or is ineligible for the death penalty." *Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001), *abrogated on other grounds by Rippo*, 134 Nev. at 423 n.12, 423 P.3d at 1097 n.12.

Chappell claims he is actually innocent of burglary, robbery, and murder. To succeed he had to "show that it is more likely than not that no reasonable juror would have convicted him in light of . . . new evidence." *Berry v. State*, 131 Nev. 957, 966, 363 P.3d 1148, 1154 (2015) (internal quotation marks omitted); *see also House v. Bell*, 547 U.S. 518, 537 (2006) ("[A] gateway claim requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995))); *Schlup*, 513 U.S. at 316 ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim."). But Chappell does not identify any new evidence; instead, he focuses on perceived inconsistencies or insufficiencies in the evidence presented at trial. And Chappell's argument that he cannot be convicted of an underlying felony and felony murder consistent with the Double Jeopardy Clause does not implicate factual innocence and is inconsistent with our caselaw. *See Brown v. McDaniel*, 130 Nev. 565, 576, 331 P.3d 867, 875 (2014) (holding that a showing of actual innocence must be "of actual innocence—factual innocence, not legal innocence"); *Talancon v. State*, 102

Supreme Court
of
Nevada

(O) 1947A

Nev. 294, 297, 721 P.2d 764, 766 (1986) ("[W]e disagree with [appellant's] contention that double jeopardy prohibits his conviction for both felony-murder and the underlying felony.").

Chappell next claims he is ineligible for the death penalty. Specifically, he argues that scant and conflicting evidence supports the sole aggravating circumstance, there were inconsistencies in the State's case, his counsel was ineffective, the aggravating circumstance also functioned as an uncharged felony for felony murder such that it did not narrow the class of defendants eligible for capital punishment, and the State violated the Confrontation Clause when introducing DNA evidence. Chappell "points to no new evidence supporting his claim of actual innocence with respect to the aggravating circumstance," and "his arguments [do not] present any issue of first impression as to the legal validity of the aggravating circumstance." *Lisle*, 131 Nev. at 362, 351 P.3d at 730; *see also Chappell III*, 2019 WL 3571279, at *1-2 (rejecting challenges to the sexual assault aggravating circumstance on the grounds that it was not supported by sufficient evidence and was invalid under *McConnell v. State*, 120 Nev. 1043, 102 P.3d 606 (2004)). Equally unavailing is Chappell's claim that he is ineligible for the death penalty based on his severe mental illness. Although he cites caselaw recognizing that juveniles and intellectually disabled persons are ineligible for the death penalty, *see Roper v. Simmons*, 543 U.S. 551, 578 (2005); *Atkins*, 536 U.S. at 321, he cites no authority holding that the mentally ill are also categorically ineligible for the death penalty. And neither this court nor the United States Supreme Court has

SUPREME COURT
OF
NEVADA

(O) 1947A

recognized such a categorical exemption.[13] Accordingly, Chappell does not demonstrate a fundamental miscarriage of justice would occur if his procedurally barred claims are not considered on the merits. We therefore conclude the district court did not err in denying this claim.

*Statutory laches*

Chappell's petition was also subject to dismissal under NRS 34.800. NRS 34.800(1) states that a petition may be dismissed if the delay in filing the petition prejudices the State in either responding to the petition or retrying the petitioner. A rebuttable presumption of prejudice arises when the delay is more than five years from a decision on direct appeal. NRS 34.800(2). To overcome the presumption of prejudice to the State in responding to the petition, the petitioner must show that "the petition is based upon grounds of which the petitioner could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the State occurred." NRS 34.800(1)(a). And to overcome the prejudice to the State in retrying the petitioner, the petitioner must demonstrate that "a fundamental miscarriage of justice has occurred in the proceedings resulting in the judgment of conviction or sentence." NRS 34.800(1)(b); *see also Little v. Warden*, 117 Nev. 845, 853, 34 P.3d 540, 545 (2001). A petitioner may demonstrate a fundamental miscarriage of justice by presenting new evidence of actual innocence. *See Mitchell v. State*, 122 Nev. 1269, 1273-74, 149 P.3d 33, 36 (2006) (indicating that a fundamental miscarriage of justice to overcome the procedural bars to an untimely or successive petition and to satisfy NRS 34.800(1)(b) can both be satisfied

---

[13]We note there are mechanisms by which a person sentenced to death may challenge the execution of the sentence based on his or her current mental status. *See* NRS 176.425; NRS 176.455.

with a showing of actual innocence); *see also Berry*, 131 Nev. at 974, 363 P.3d at 1159 (indicating that if a petitioner could not show a fundamental miscarriage of justice for purposes of an actual-innocence-gateway claim, his or her petition would also be barred by NRS 34.800).

Here, the State pleaded laches under NRS 34.800, and the district court found that Chappell had not rebutted the presumption of prejudice to the State. We agree with the district court's assessment. The overwhelming majority of the claims in the third petition are based on grounds of which Chappell could or did have knowledge long before he filed the third petition. In fact, the district court and this court have considered and rejected the substance of many claims in the petition in prior proceedings. And again, Chappell does not allege new evidence demonstrating his factual innocence. Accordingly, we conclude the district court did not abuse its discretion in applying statutory laches to Chappell's petition.

## *CONCLUSION*

Various mandatory procedural bars foreclosed Chappell's petition, and he did not show good cause and prejudice to overcome those bars. The untimely claims about first postconviction counsel's performance could not constitute good cause, and Chappell does not show good cause and prejudice based on the alleged ineffective assistance of second postconviction counsel, of which most instances were not adequately pleaded below or addressed in the appellate briefs. Finally, Chappell did not demonstrate that the failure to consider his petition would result in a fundamental miscarriage of justice, and we conclude the district court did

not abuse its discretion in applying statutory laches.  Therefore, we affirm the district court's order dismissing the petition.

_____, J.
Cadish

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A